UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNAE HOYT,<br><br>                                   Plaintiff,<br><br>v.<br><br>GEORGE VALDOVINOS, et al.,<br><br>                                  Defendant. | Case No.: 3:19-cv-01553-L-AHG<br><br>**ORDER:**<br><br>**(1) RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE AND GRANTING PLAINTIFF'S MOTION TO COMPEL, and**<br><br>**(2) GRANTING JOINT MOTION TO CONTINUE THE DISCOVERY CUT-OFF**<br><br>**[ECF Nos. 66, 71]** |

Before the Court is the Plaintiff Johnae Hoyt ("Plaintiff") and Third-Party California Office of the Inspector General's ("OIG") Joint Motion for Determination of Discovery Dispute. ECF No. 66. Plaintiff served a subpoena on OIG, to which OIG objects. *Id*. For the reasons set forth below, Plaintiff's motion to compel is **GRANTED**.

### I.    FACTUAL BACKGROUND

Plaintiff, a state prisoner proceeding *in forma pauperis* and represented by counsel, filed a civil rights complaint pursuant to 42 U.S.C. § 1983, claiming various prison officials

at Richard J. Donovan Correctional Facility ("RJD") violated his First and Eighth Amendment rights in April 2017 while he was incarcerated there. ECF No. 12. Plaintiff alleges that Defendants Cruz, Valdovinos, and Ramos handcuffed him, pepper sprayed him, and broke four of his teeth. ECF No. 54 at 2. Defendants contend that Plaintiff had lost his privileges to go to the prison yard due to prior disciplinary citations, but tried to force his way into the yard by threatening prison staff. *Id*. Defendants contend Plaintiff attacked officers and attempted to strike them with his open hand, and the officers used pepper spray to stop his advance. *Id*. While approaching Plaintiff, Defendants contend that Defendant Valdovinos slipped in the pepper spray and landed on Plaintiff. *Id*. Plaintiff alleges that Defendants Ramos and McGee threatened him, causing him to submit to a video interview in which he stated that his injuries were caused by accident. *Id*. Plaintiff also alleges that Defendant Cortez improperly found him guilty of a rules violation and Defendant Godinez threatened Plaintiff into dropping his excessive force claim. *Id*. Defendants deny that Plaintiff's testimony was coerced, or that they retaliated against him in any way. *Id*.

## II. PROCEDURAL BACKGROUND

On October 7, 2019, Plaintiff filed his third amended civil rights complaint pursuant to 42 U.S.C. § 1983. ECF No. 12. On January 23, 2020, 18 of the 21 named Defendants filed their amended answer to Plaintiff's complaint. ECF No. 41. The same day, these Defendants filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before filing suit, which Plaintiff opposed. ECF Nos. 42, 49, 50. On September 3, 2020, the Court granted in part and denied in part Defendants' motion. ECF No. 52. The Court denied summary judgment as to Defendants Valdovinos, McGee, Ramos, Bracamonte, Godinez, and Cortez, and granted summary judgment as to all remaining Defendants. *Id*. at 18–23.

The Court held a telephonic Case Management Conference on October 5, 2020, and issued its Scheduling Order on October 6, 2020. ECF Nos. 55, 56. After granting certain extensions, fact discovery in this case closes on June 23, 2021. ECF No. 65.

On April 7, 2021, pursuant to the Court's Chambers Rules, Plaintiff and OIG notified the Court that they disagreed about a subpoena Plaintiff served on OIG. Email to Chambers (Apr. 7, 2021 at 7:10 p.m.); *see* Chmb.R. at 2. The Court found it appropriate to issue a briefing schedule in this matter, requiring that the joint motion be filed by April 22, 2021 at 5:00 p.m. ECF No. 63 at 2. The parties untimely filed their joint motion on April 23, 2021.[1] ECF No. 66. This order follows.

### III. DISCOVERY REQUEST AT ISSUE

Plaintiff seeks to compel responses to its third-party subpoena for the production of documents. ECF No. 66-1 at 3. In the subpoena, Plaintiff requests "[a]ll documents and other materials related to any incident involving Johnae Hoyt, K-67211 from April 23, 2017 to the present." *Id*. On February 12, 2021, OIG served its objections to the subpoena. *Id*. at 5–13. OIG objects to the subpoena on the grounds[2] that responsive documents are protected from disclosure by various privileges prescribed by the California Penal Code. ECF No. 66 at 7 (citing CAL. PEN. CODE §§ 6126.3(c)(3), 6126.3(c)(5), 6126.6). OIG listed the documents withheld in supplemental privilege logs. ECF No. 66-1 at 21–33, 37–39. OIG represents that there are three categories of documents that remain in dispute: (1) "various communications, analyses, and notes OIG staff compiled while

---

[1] Though the instant motion is subject to being stricken from the record (*see* CivLR 7.1(e)(7)), in the interest of resolving this dispute expeditiously, the Court consents to the late filing.

[2] OIG also objected on the grounds that the request is vague, ambiguous, overly broad, unduly burdensome, compound, and is not relevant. ECF No. 66-1 at 7. However, these objections were not reasserted in the instant motion, and are therefore deemed waived. *See, e.g.*, *SolarCity Corp. v. Doria*, No. 16cv3085-JAH-RBB, 2018 WL 467898, at *3 (S.D. Cal. Jan. 18, 2018) (courts in this district "generally consider[ ] only those objections that have been timely asserted in the initial response to the discovery request and that are subsequently reasserted and relied upon in response to the motion to compel."); *Sherwin-Williams Co. v. Earl Scheib of Cal.*, Inc., No. 12cv2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (deeming all objections raised in response to the discovery requests but not addressed in the discovery motion to be moot or waived, limiting its review to arguments presented in the parties' briefs).

assessing several letters Plaintiff sent to OIG;" (2) "various internal notes and analyses OIG staff compiled while monitoring CDCR's review of force that [RJD] staff applied on Plaintiff on April 23, 2017;" and (3) "a confidential report compiled by OIG staff between February and June 2020 for the Inspector General's vetting of [a candidate for warden]." ECF No. 66 at 6–7.

## IV. LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" FED. R. CIV. P. 26(b)(1). Here, the issue is whether the discovery sought is nonprivileged. In a civil rights lawsuit brought against state actors under federal law, privilege issues are resolved using federal law. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987) (citing *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975)). For this reason, the Court will apply federal law to OIG's privilege claims.[3]

"Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing *Kerr*, 511 F.2d at 198). The official information privilege is subject to the competing interests of the requesting party and is "subject to disclosure especially where protective measures are taken." *Sanchez*, 936 F.2d at 1033. Courts embrace "a balancing approach that is

---

[3] OIG argues that "California Penal Code sections 6126.3 and 6126.4 ought to play a critical role in this Court's decision." ECF No. 66 at 7. The Court disagrees. "It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims." *Kelly*, 114 F.R.D. at 655–56. The Court, however, "[a]s a matter of comity, [has] attempt[ed] to ascertain what interests inspire relevant state doctrine and [has] take[en] into account the views of state authorities about the importance of those interests." *Id*.

moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661 (ordering disclosure of law enforcement documents subject to a protective order to a plaintiff in a § 1983 action).

A party wishing to invoke the official information privilege must first comply with a series of procedural requirements to make a threshold showing that the privilege applies, which were specified in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987). *See Hampton v. City of San Diego*, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) and *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); *see, e.g.*, *Villa v. County of San Diego*, No. 20cv537-CAB-NLS, 2021 WL 242981, at *2–*3 (S.D. Cal. Jan. 25, 2021) (applying *Kelly*).

The party asserting the privilege must make a "substantial threshold showing." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). First, a party seeking to invoke the official information privilege in response to a discovery request must serve a timely discovery response specifically identifying the official information privilege as a basis for its objection. *Kelly*, 114 F.R.D. at 669. Second, the objection must be accompanied by a declaration or affidavit "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Id*. The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant

5

3:19-cv-01553-L-AHG

governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Id*. at 670.

A "general assertion" that a law enforcement organization's internal investigatory system "'would be harmed by disclosure of the documents is insufficient' to meet the threshold test for invoking the official information privilege." *Soto*, 162 F.R.D. at 614 (quoting *Chism v. County of San Bernardino*, 159 F.R.D. 531, 534–35 (C.D. Cal. 1994)); *see, e.g.*, *Villa*, 2021 WL 242981, at *2–*3. Similarly, a "general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure." *Soto*, 162 F.R.D. at 614; *Miller*, 141 F.R.D. at 300–01; *Kelly*, 114 F.R.D. at 672. The party resisting discovery "must specifically describe how disclosure of the requested documents in that particular case would be harmful." *Soto*, 162 F.R.D. at 614; *Miller*, 141 F.R.D. at 300–01.

"If the nondisclosing party does not meet this initial burden of establishing cause to apply the privilege, the court must order disclosure of the documents; if the party meets this initial burden, the court generally conducts an *in camera* review of the material and balances[4] each party's interests." *Bryant v. Armstrong*, 285 F.R.D. 596, 605 (S.D. Cal.

---

[4] The balancing test requires that "courts must weigh the potential benefits of disclosure against the potential disadvantages." *Sanchez*, 936 F.2d at 1033–34. The *Kelly* court provided a non-exhaustive list of factors that may be considered when engaging in this weighing process: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the

2012). Unless the nondisclosing party meets the threshold showing through the accompanying declaration, "the court cannot conduct a meaningful balancing analysis. And because the burden of justification must be placed on the party invoking the privilege, a court that cannot conduct a meaningful balancing analysis because the government has not provided the necessary information would have no choice but to order disclosure." *Kelly*, 114 F.R.D. at 669.

## V. DISCUSSION

In its discovery responses served on February 12, 2021, OIG specifically referenced the official information privilege. *See* ECF No. 66-1 at 7 ("The OIG further objects to this request insofar as it also attempts to invade the … official information, self-critical analysis, and deliberative process privileges, specifically with respect to communications with the CDCR. In addition, the OIG objects to the production of any documents pursuant to … *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987)."). Accompanying its discovery responses, OIG submitted the declaration of Roy Wesley, who currently serves as OIG's Inspector General. ECF No. 66-1 at 9–13. In his declaration, Mr. Wesley summarizes OIG's responsibilities, focusing on OIG's oversight of the California Department of Corrections and Rehabilitation's ("CDCR") internal affairs investigations and OIG's own investigations into alleged "misconduct, abuse, retaliation, and other wrongdoing" of CDCR, explaining why these processes should remain confidential. *Id*. at 10–11. Mr. Wesley states that he has "personally reviewed the material that was withheld from production in response to the subpoena[.]" *Id*. at 12. He contends that "[t]he documents, although some created by the OIG, are based on information and documentation provided to the OIG by CDCR. . . . [T]hese documents cannot be released to the Plaintiff in this case. The documents contain sensitive information that must not be

---

importance of the information sought to the plaintiff's case. *Kelly*, 114 F.R.D. at 663 (referencing factors from *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973)). In making this determination, courts must conduct "a situation specific analysis of the factors made relevant by the request in issue and the objection to it." *Kelly*, 114 F.R.D. at 663.

circulated among inmates. In my opinion, the disclosure of these documents to the Plaintiff would pose a significant risk of harm to the safety and security of CDCR personnel, other incarcerated inmates and the prison institution itself." *Id*. at 12. Regarding "complaints of misconduct, abuse, retaliation, and other wrongdoing" against CDCR, Mr. Wesley contends that "[i]f the OIG is ordered to produce the documents that are the subject of this discovery dispute, the OIG's confidentiality statutes will be weakened, and the OIG will not likely be able to protect the identities of persons who come forward with information concerning misconduct. The OIG will be unable to ensure that such information will remain confidential. Law enforcement agencies, citizens, inmates and CDCR personnel would be less likely to come forward. to report misconduct in the future. The resulting harm to the public and the OIG would be irreparable and undermine future OIG investigations[5] and reviews." *Id*. at 11–12.

The Court finds that Mr. Wesley's declaration does not meet the third and fourth threshold factors set forth in *Kelly*. *See* 114 F.R.D. at 670 (the affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made). The Court finds that Mr. Wesley's statements "lack case-specific information and amount to only general assertions that does not meet the third factor under *Kelly*." *Villa*, 2021 WL 242981, at *2–*3 (finding declarations insufficient, noting declarations

---

[5] The Court notes that Mr. Wesley's declaration contradicts counsel's argument in the present motion. *See* ECF No. 66 at 7 ("The OIG has no investigative authority, did not investigate the incident…").

highlighted concerns over the safety of those who have provided information and the potential for dissuading others from providing essential information regarding misconduct); *see Soto*, 162 F.R.D. at 621; *Miller*, 141 F.R.D. at 300–01; *Kelly*, 114 F.R.D. at 672. Rather, "the declaration is general enough that it could presumably be submitted, with minor modifications, in any prisoner civil rights case in which the prisoner seeks access to [OIG] documents." *Stevenson v. Blake*, No. 11cv103-LAB-WVG, 2012 WL 3282892, at *3 (S.D. Cal. Aug. 10, 2012). Additionally, upon review of the privilege log,[6] the Court notes that many of the documents originally withheld were clearly not privileged. *See* ECF No. 66-1 at 21–33 (for example, although these documents are no longer at issue, 8 of the 73 documents originally withheld were letters from Plaintiff and responses sent to Plaintiff).

Further, Mr. Wesley's statements do not explain why a well-crafted protective order would not be able to protect the asserted interests, nor does he acknowledge the current protective order in this case (ECF No. 59). "The use of a carefully drafted protective order is a tool often employed by courts in these types of cases and would substantially reduce [] confidentiality concerns." *Villa*, 2021 WL 242981, at *3. Though the Court does not agree that the declaration makes a case-specific showing of harm regarding the possibility of Plaintiff accessing the information and then circulating it among inmates, the Court finds that further protection may be provided by requiring that the documents be disclosed only to Plaintiff's counsel. *Compare* ECF No. 66-1 at 12 (declaration, stating "these documents

---

[6] The Court also notes that OIG's privilege log lacks requisite detail. *See* FED. R. CIV. P. 26(b)(5)(A) (requiring that, when withholding information, the party "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim"); *Rawcar Grp., LLC v. Grace Med., Inc.*, No. 13cv1105-H-BLM, 2013 WL 12076572, at *6–*7 (S.D. Cal. Dec. 6, 2013) (finding that "Defendants' privilege logs are inadequate as they … do not provide sufficient information about the subject matter of the communications," noting that "Defendants' subject summaries are too conclusory to permit Plaintiff or the Court to assess the validity of the claimed privilege").

cannot be released to the Plaintiff in this case. The documents contain sensitive information that must not be circulated among inmates. In my opinion, the disclosure of these documents to the Plaintiff would pose a significant risk of harm to the safety and security of CDCR personnel, other incarcerated inmates and the prison institution itself.") *with* ECF No. 66 at 4 (Plaintiff's portion of the joint motion, stating "Plaintiff is willing to agree to a protective order allowing only his attorney to view it") *and* ECF No. 66 at 10 (OIG's portion of the joint motion, stating "[i]f the Court determines that the documents should be produced and orders disclosure, the OIG further requests that its documents be subject to a protective order that restricts viewing to 'attorneys' eyes only' and limits use of the information to this action only"); *see also* ECF No. 59 (current protective order, stating "[a]ny party may designate information as "CONFIDENTIAL - FOR COUNSEL ONLY" only if, in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited information that potentially places the safety of non-parties at risk, or results in the disclosure of confidential, personal information concerning non-parties").

Thus, the Court finds that, under *Kelly*, Defendants did not make a threshold showing of the official information privilege. Though OIG's argument in the briefing focused primarily on the *Kelly* balancing test (ECF No. 66 at 8–9), "[b]ecause they did not meet this [threshold] requirement, the Court need not apply the balancing test from *Kelly* to determine whether disclosure of documents should be permitted or whether disclosure would harm significant governmental interests." *Villa*, 2021 WL 242981, at \*3 (declining to apply the balancing test and requiring disclosure when the declaration did not meet the third and fourth threshold *Kelly* factors); *see, e.g.*, *Eusse v. Vitela*, No. 13cv916-BEN-NLS, 2015 U.S. Dist. LEXIS 167660, at \*12–\*13 (S.D. Cal. Dec. 14, 2015) (declining to apply the balancing test and requiring disclosure when the declaration did not meet the second and fourth threshold *Kelly* factors); *Bryant*, 285 F.R.D. at 605 (declining to apply the balancing test and requiring disclosure when the declaration did not meet the threshold showing). As such, the Court **GRANTS** Plaintiff's motion to compel and requires OIG to

produce responsive documents by **June 30, 2021**, subject to protective order. Since OIG is a third-party without automatic electronic docket access for this case, Plaintiff shall immediately ensure OIG is served with this Order.

## VI. JOINT MOTION TO CONTINUE THE FACT DISCOVERY CUT-OFF

The parties have also filed a joint motion to extend the fact discovery cut-off. ECF No. 71. The parties seek an order from the Court extending the deadline by approximately one month. *Id*.

Parties seeking to continue deadlines must demonstrate good cause. Chmb.R. at 2 (stating that any request for continuance requires "[a] showing of good cause for the request"); *see also* Fed. R. Civ. P 6(b) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time"). "Good cause" is a non-rigorous standard that has been construed broadly across procedural and statutory contexts. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010). The good cause standard focuses on the diligence of the party seeking to amend the scheduling order and the reasons for seeking modification. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. . . . If that party was not diligent, the inquiry should end.") (internal citation omitted).

The current fact discovery cut-off is June 23, 2021. ECF No. 65 at 2. The parties have represented to the Court that, though they have been diligently working to complete discovery in this case, they have three depositions left to conduct. ECF No. 71; *see* ECF No. 69 (granting leave to depose ten third-party inmate witnesses). Witnesses Dave Anderson and James Watkins are incarcerated at California State Prison in Los Angeles County, and the video rooms for depositions are not available there until July 6, 2021. ECF No. 71 at 3. Witness Benjamin Frank has been transferred to a mental health crisis bed at the California Institute for Men and is not currently available for deposition. *Id*. Hence, the parties seek an order from the Court extending the fact discovery cut-off by 30 days. *Id*. at 3–4.

The Court appreciates the thorough motion and that the parties have been working together to timely complete discovery. The Court finds that the parties have demonstrated the diligence necessary to meet the good cause standard. Therefore, the Court **GRANTS** the motion. Fact discovery must be completed by **July 23, 2021**.[7]

## VII. CONCLUSION

For the reasons set forth above, the Court:

1. **GRANTS** Plaintiff's Motion to Compel (ECF No. 66). OIG must produce responsive documents by **June 30, 2021**, subject to a protective order that restricts viewing to "attorneys' eyes only" and limits use of the information to this action only.

2. *Sua sponte* **AMENDS** the operative Protective Order (ECF No. 59) to include productions made by OIG.

3. **GRANTS** the parties' Joint Motion to Continue the Fact Discovery Cut-Off (ECF No. 71). Fact discovery must be completed by **July 23, 2021**. All other dates, deadlines, and procedures set forth in the Second Amended Scheduling Order (ECF No. 65) remain in place, except as explicitly modified by this Order.

**IT IS SO ORDERED.**

Dated: June 22, 2021

Honorable Allison H. Goddard
United States Magistrate Judge

---

[7] All other dates, deadlines, and procedures set forth in the Second Amended Scheduling Order (ECF No. 65) **remain in place**, except as explicitly modified by this Order.